UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ANTHONY MARK DELOACH,

Plaintiff,

v.

MICHELLE VIEAU et al.,

Defendants.

______________________________/

Case No. 2:25-cv-316

Honorable Paul L. Maloney

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about

which he complains occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Wellpath Grand Prairie Health Care Services (Wellpath) and the following KCF staff: Registered Nurse Michelle Vieau, Correctional Officer Unknown Lawson, Doctor Timothy J. Stallman, and Warden Unknown Party #1. (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he alleges that "several years before this incident," he was diagnosed with "BPH (benign prostatic hyperplasia) with significant lower urinary tract symptoms[.]" (*Id.*, PageID.4.) For at least four years, Plaintiff had been taking Flomax. (*Id.*) On January 20, 2022, and May 18, 2022, Plaintiff experienced urinary retention that required Plaintiff to be catheterized by KCF "healthcare staff[.]" (*Id.*) Also on May 18, 2022, Defendant Stallman doubled Plaintiff's Flomax dosage. (*Id.*) Plaintiff states that his symptoms only worsened and that "[i]t was clear that Flomax was not working." (*Id.*)

On the night of June 27, 2022,[1] Plaintiff "developed a complete inability to urinate," which resulted in "a severe burning pain and swelling of his prostate a bladder." (*Id.*) At 2:00 a.m. and 4:00 a.m. on June 28, 2022, Plaintiff informed Defendant Lawson that Plaintiff was experiencing "a medical emergency." (*Id.*) Both times, Defendant Lawson told Plaintiff that "nobody was in health care between the hours of [10:00 p.m.] and [7:00 a.m.]," and ordered Plaintiff to return to his cell. (*Id.*) Defendant Lawson told Plaintiff to talk to a correctional officer after the shift change.

[1] Plaintiff signed his complaint on December 17, 2025, more than three years after the allegations in Plaintiff's complaint. (Compl., ECF No. 1, PageID.9.) State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268–69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). However, at this early stage of the proceedings, because it is possible that Plaintiff could have begun exhausting his administrative remedies before the end of the three-year period, the Court will not dismiss Plaintiff's complaint as untimely at this time.

(*Id.*) Defendant Lawson did not contact the control center or his shift command superiors about Plaintiff's medical concerns. (*Id.*)

At approximately 7:00 a.m. on June 28, 2022, Plaintiff informed nonparty Correctional Officer Unknown Newell that he was experiencing a medical emergency. (*Id.*) Nonparty Newell then called the healthcare department and let Plaintiff speak to Defendant Vieau. (*Id.*) Plaintiff explained to Defendant Vieau what had happened, and she responded that "five hours is not that long to be unable to urinate." (*Id.*) She told Plaintiff to call back in an hour. (*Id.*)

At 8:00 a.m., Plaintiff again called Defendant Vieau and told her that he was in "agonizing pain[.]" (*Id.*) Defendant Vieau told Plaintiff that he would be fine, and that he should call back in four hours. (*Id.*) After Plaintiff objected, Defendant Vieau told nonparty Newell to send Plaintiff to healthcare. (*Id.*)

While at healthcare, Plaintiff was examined by "KCF Medical Staff." (*Id.*) Additionally, Defendant Vieau made three or four unsuccessful attempts to insert a catheter into Plaintiff's penis, which resulted in "severe bleeding" and "excruciating pain." (*Id.*) Plaintiff was then transported to the hospital, where additional unsuccessful attempts to insert a catheter were made by unidentified individuals. (*Id.*, PageID.5.) Eventually, a suprapubic catheter was surgically placed into Plaintiff's abdomen. (*Id.*)

Plaintiff alleges that after he returned to KCF, "KCF healthcare staff never inspected, cleaned, or properly flushed the suprapubic catheter per the hospital's instructions." (*Id.*, PageID.6.) On June 30, 2022, Plaintiff was transported back to the hospital due to leaking of the catheter and fullness of Plaintiff's bladder. (*Id.*) Hospital staff irrigated Plaintiff's bladder. (*Id.*) Plaintiff returned to the hospital on July 3 and 4, 2022, "due to obstructions in his suprapubic

catheter." (*Id.*) Both times, Plaintiff's catheter was flushed at the hospital and he was returned to KCF. (*Id.*)

"Sometime in July," Plaintiff was found to have "severe obstructive prostatic hypertrophy[.]" (*Id.*) On July 21, 2022, Plaintiff "suffered an infection," which he attributed to "lack of cleaning of the equipment by KCF healthcare" and/or "lack of medication[.]" (*Id.*)

On September 2, 2022, Plaintiff was transported to the hospital when his catheter "popped out of the incision." (*Id.*) At that time, a doctor at the hospital decided that the catheter should remain out. (*Id.*) on November 29, 2022, Plaintiff underwent a prostatectomy. (*Id.*, PageID.7.) Plaintiff alleges that he now suffers from permanent physical problems. (*Id.*)

Based on the foregoing allegations, Plaintiff raises Eighth Amendment deliberate indifference claims against the named Defendants. Plaintiff seeks declaratory relief and monetary damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III. Claims Against Defendants Wellpath and Unknown Party #1

Plaintiff names Wellpath and Unknown Party #1, identified as the warden, as Defendants in this matter. (Compl., ECF No. 1, PageID.2.) But the body of Plaintiff's complaint does not contain any factual allegations regarding Defendants Wellpath or Unknown Party #1. (*See id.*, PageID.4–7.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002)

(dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

Here, Plaintiff does not present any facts attributed to Defendants Wellpath Grand Prairie Health Care Services or Unknown Party #1 in the body of his complaint. (*See* Compl., ECF No. 1, PageID.4–7.) The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).

Plaintiff alleges that Defendant Lawson represented to Plaintiff that "nobody was in health care" at KCF between the hours of 10:00 p.m. and 7:00 a.m., and based solely on that, Plaintiff concludes that Defendants Wellpath and Unknown Party #1 were deliberately indifferent to Plaintiff's serious medical needs. (Compl., ECF No. 1, PageID.4, 8.) However, besides Plaintiff's conclusory assertion regarding Defendant Lawson's statement about the lack of healthcare staff during those hours, Plaintiff alleges no *facts* to indicate whether any staff were actually in healthcare at that time or to suggest that Defendants Wellpath and Unknown Party #1 had any involvement in the matter, either directly or through a policy. Instead, Plaintiff's allegations are

entirely conclusory and are insufficient to state to state any claim against Defendants Wellpath and Unknown Party #1.

Accordingly, the Court will dismiss all intended claims against Defendants Wellpath and Unknown Party #1.

## IV. Eighth Amendment Deliberate Indifference Claims

Plaintiff asserts Eighth Amendment deliberate indifference claims against Defendants Stallman, Lawson, and Vieau stemming from the medical care, or lack thereof, that Plaintiff received. (Compl., ECF No. 1, PageID.7–8.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes, U.S. Const. amend. VIII, and the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id*. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id*. In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id*. The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty*., 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty*., 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically

serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state

> a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id*. at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id*.; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty*., 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v.*

*Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

**A. Defendant Stallman**

Plaintiff alleges that he had been treated with Flomax for at least four years before Defendant Stallman decided to double Plaintiff's dosage on May 18, 2022. (Compl., ECF No. 1, PageID.4.) Plaintiff alleges that he suffered an episode of urinary retention that same day; although it is unclear from Plaintiff's complaint if that occurred before or after Defendant Stallman increased Plaintiff's dosage. (*Id.*) Plaintiff claims that, despite this increased dosage, his symptoms worsened. (*Id.*) Plaintiff concludes that Defendant Stallman was deliberately indifferent to Plaintiff's serious medical condition because he "fail[ed] to properly treat and prescribe different medication when it was found that Flomax was not working properly[.]" (*Id.*, PageID.7.)

However, Plaintiff's factual allegations do not support this conclusion. Plaintiff's factual allegations only show that on May 18, 2022, Defendant Stallman doubled Plaintiff's Flomax dosage. (*Id.*, PageID.4.) Plaintiff alleges that after Defendant Stallman increased Plaintiff's Flomax dosage, his symptoms worsened and "[i]t was clear that Flomax was not working." (*Id.*) But Plaintiff does not allege that he was seen by Defendant Stallman after that occurred, or that Defendant Stallman was informed that Plaintiff's symptoms had worsened and the medication was not working. Instead, Plaintiff's allegations suggest that Defendant Stallman was responsive to Plaintiff's medical issues and attempted to alleviate those issues with an increased dosage of the medication that Plaintiff had been using for at least four years. To the extent that this course of treatment did not rectify Plaintiff's problem, Plaintiff's allegations do not show that Defendant Stallman's decision to increase Plaintiff's dosage was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller*, 408

F.3d at 819. Therefore, these allegations do not show that Defendant Stallman was deliberately indifferent to a substantial risk of serious harm.

Plaintiff also concludes that Defendant Stallman was deliberately indifferent to Plaintiff's serious medical needs because he "fail[ed] to supervise and insure that the nursing staff was following the instructions forwarded by the hospital[.]" (Compl., ECF No. 1, PageID.7.) Plaintiff's factual allegations do not indicate that Defendant Stallman had any involvement in Plaintiff's medical care aside from increasing plaintiff's Flomax dosage on May 18, 2022. (*Id*., PageID.4.) And, Plaintiff does not allege any facts to suggest that Defendant Stallman had any involvement in Plaintiff's medical care after May 18, 2022, including the period of time during which Plaintiff had a suprapubic catheter. (*See id*., PageID.4–7.)

Additionally, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee* [*v. Luttrell*], 199 F.3d [295,] 300 [(6th Cir. 1999)] (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum,"

> the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993). Plaintiff alleges no facts to suggest that Defendant Stallman "authorized, approved, or knowingly acquiesced" in any allegedly unconstitutional conduct of others.

Accordingly, for all of these reasons, Plaintiff has failed to state an Eighth Amendment deliberate indifference claim against Defendant Stallman.

**B. Defendants Lawson**

Plaintiff alleges that he informed Defendant Lawson, a correctional officer, of Plaintiff's "medical emergency" at 2:00 a.m. and 4:00 a.m. on June 28, 2022. (Compl., ECF No. 1, PageID.4.) Plaintiff alleges that in response, Defendant Lawson told Plaintiff that nobody was in the healthcare department until 7:00 a.m., and that Plaintiff needed to return to his cell. (*Id*.) Plaintiff alleges that Defendant Lawson did not inform the contact control center or his shift command superiors of Plaintiff's medical problem. (*Id*.) Plaintiff contends that this delay in treatment caused him to suffer, caused his prostate to swell, and caused severe bladder retention.

Here, although Plaintiff has by no means proven his Eighth Amendment claim against Defendant Lawson, the Court will not dismiss this claim against Defendant Lawson in his individual capacity at this stage of the proceedings.

**C. Defendant Vieau**

Plaintiff alleges that he spoke to Defendant Vieau at 7:00 a.m. on June 28, 2022, informing her of his medical issue, and that she told him to call back in an hour. (*Id*.) When Plaintiff called Defendant Vieau an hour later, she again told him to call back later. (*Id*.) After Plaintiff objected,

Defendant Vieau told nonparty Newell to send Plaintiff to the healthcare department. (*Id.*) While Plaintiff was there, Defendant Vieau unsuccessfully attempted to insert a catheter into Plaintiff's penis three or four times. (*Id.*) These attempts caused "severe bleeding and excruciating pain." (*Id.*)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Under these circumstances, although Plaintiff has by no means proven his Eighth Amendment claim against Defendant Vieau, the Court will not dismiss this claim against Defendant Vieau at this time.

## **Conclusion**

For the foregoing reasons, the Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, having conducted the review required by the PLRA, the Court determines that Defendants Wellpath, Unknown Party #1, and Stallman will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Vieau and Lawson remain in the case.

An order consistent with this opinion will be entered.

Dated: September 18, 2026

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge